## LAY v. THE STATE.

1. INDICTMENT: *Statute of Limitations.*
   Where an indictment against a party for a felony is dismissed and a new indictment found against him for the same offense, the time of the pendency of the first indictment must be excluded in the application of the statute of limitations to the second, although in the first he was indicted as principal and in the second as accessory.

2. SAME: *Principal and accessory in different counts: Misjoinder.*
   An indictment in two counts, one charging the defendant as principal and the other as accessory before the fact, in the same felony, is no misjoinder of offenses, but a charge of the same offense in different modes.

3. STATUTE OF LIMITATIONS: *Fleeing from justice.*
   It is not necessary in order to suspend the statute of limitations in a criminal prosecution, that the defendant should leave the State. It is a fleeing from justice within the meaning of the statute for him to abscond from his known place of abode and secrete himself in another county to avoid arrest and prosecution for the offense.

4. EVIDENCE: *Witnesses: Accomplice: Corroboration.*
   (For the facts constituting the corroboration of an accomplice in this case see the opinion.—REP.)

APPEAL from *Cleburne* Circuit Court.

Hon. F. T. VAUGHAN, Circuit Judge.

*S. R. Allen and E. A. Bolton* for appellant.

1. The record does not show that the jury were properly sworn. *Sec. 1921 Gantt's Digest; 21 Ark., 144; 17 Ib., 332; 11 Ib., 455.*

Lay v. The State.

2. The prosecution was barred by limitation, the indictment not having been found within three years. The finding of the first indictment did not stop the statute, as it was for a different offense, and does not come within the exceptions of the statute. (*Gantt's Digest, secs. 1667, 1664 and 1844.*) The first indictment was not quashed, reversed or set aside.

3. The conviction was had upon the uncorroborated testimony of an accomplice. *Sec. 1, act Jan. 25, 1883, pp. 2 and 3.*

*C. B. Moore, Attorney General,* for the State.

1. The record sufficiently shows that the jury were sworn. *34 Ark., 257.*

2. The second indictment was for the same offense (sections 1237–38 Gantt's Digest); and, counting out the time the first was pending, the second was not barred. *See 4 Blk. Com., 367; Arch. Cr. Ev., 11; 1 East P. C., 186; Bish. St. Cr., 261; 13 Bush., 142; 6 Jones, N. C., 42–43; 5 Ib, 221.*

3. Appellant was a fugitive from justice. *Sec. 1666 Gantt's Digest; 48 Mo., 240; 3 Dil., 381; 4 Day, 121.*

4. Evans was not an accomplice, but if he was, his testimony was sufficiently corroborated. *8 Tex. Ct. App., 230; 36 Legal Intelligencer, Nov. 14, p. 443; Ib., 444.*

### STATEMENT.

ENGLISH, C. J.   On the twelfth of October, 1880, Thomas Neal, W. L. Lay, Robert J. Bowers and Alexander Evans were jointly indicted in the Circuit Court of Van Buren County for an assault upon John W. Sivils with a gun, with intent to murder him.

This indictment was pending in the Circuit Court of Van Buren County when the act of February 20, 1883, to

establish the County of Cleburne, was passed (Acts 1883, p. 39); and, after the passage of the act, was transferred to the Circuit Court of Cleburne County, the offense having been committed and the parties accused residing in that part of the territory of Van Buren County which was in-cluded in the County of Cleburne.

After the transfer, at the August term, 1883, of the Circuit Court of Cleburne County, the attorney for the State, by leave of the court, entered a *nol. pros.* as to the defendant, W. L. Lay, and the case as to him was referred to the grand jury.

At the same term a new indictment was returned against Lay for the same offense, in which the assault upon John W. Sivils was alleged to have been made by Thomas Neal, and Lay was charged as an accessory before the fact.

Lay was arraigned upon this indictment, pleaded not guilty, was tried by a jury, found guilty and his punishment fixed at four years' imprisonment in the penitentiary.

He moved in arrest of judgment, on the ground that the indictment did not state facts sufficient to constitute a public offense within the jurisdiction of the court; and the motion was overruled.

He also moved for a new trial, which was refused; he took a bill of exceptions, was sentenced in accordance with the verdict, and obtained an appeal.

OPINION.

Counsel for appellant have not submitted any objection to the form or sufficiency of the indictment in the extended argument filed by them. They insist that a new trial should have been granted on several grounds, which will be taken up and disposed of in the order in which they have been presented and discussed.

1. There is nothing in the point that the record fails to

show that the trial jury was sworn. The entry showing the impanneling of the jury, after naming the jurors selected, adds, " twelve good and lawful men, and qualified electors of Cleburne County, who were selected, accepted, tried, impanneled and sworn according to law," etc.

This entry sufficiently shows that the jurors were duly sworn.  *Anderson v. State, 34 Ark., 257.*

1. INDICT-
MENT:
Statute
of limita-
tions.

II.   Under the assignment in the motion for a new trial that the verdict was contrary to law and evidence, it is submitted for appellant, that the second indictment under which he was convicted, was barred by the statute of limitations.

Section 1664 Gantt's Digest provides that no person shall be prosecuted, tried and punished for any felony not punishable with death, unless an indictment be found within three years after the commission of the offense.

Section 1665 limits prosecution for offenses less than felony to one year.

Section 1636 provides:   " Nothing in the two preceding sections shall avail any person who shall flee from justice, and in all cases the time during which any defendant shall not have been a resident of this State, shall not constitute any part of the limitation prescribed in the preceding sections." .

Section 1667 provides that:   " When any indictment or prosecution shall be quashed, set aside or reversed, the time during which the same was pending shall not be computed as part of the time of the limitation prescribed for the offense."

It was admitted by appellant, on the trial, that he was indicted in the Circuit Court of Van Buren County, on the twelfth day of October, 1880, together with Thomas Neal and others, and that on the twenty-eighth day of August, 1883, said cause having been transferred to the Cleburne

Circuit Court, the attorney for the State entered a *nol. pros.* of the indictment against appellant, and asked to have the cause referred to the grand jury of Cleburne County; and that the cause being referred, the grand jury of said county, on the same day, returned into court an indictment against appellant for the same offense, which was substituted for the original indictment in this case, charging him as an accessory before the fact to an assault with intent to kill and murder.

Both of the indictments are in the transcript before us; the first charged appellant as a principal in the assault upon Sivils, and the second charged him as an accessory before the fact to the same assault, as above stated.

It was proved on the trial that appellant hired Thomas Neal to kill Sivils, but was not actually or constructively present when Neal shot Sivils.

If, therefore, appellant had been tried upon the first indictment charging him as a principal, he could not have been convicted; for, though by statute an accessory before the fact is punishable as a principal, he must be indicted as an accessory. *Boze Smith v. State, 37 Ark., 274; Matilda Williams v. State, 40 Ark., 172.*

It was no doubt because of this mistake or defect in the first indictment that a *nol. pros.* was taken as to appellant, and the second indictment substituted.

The offense charged in the two indictments was the same, but the agency of appellant in the crime was not charged in the second as in the first indictment. If the first indictment had contained two counts, one charging appellant as principal, and the other as accessory before the fact, it would have been no misjoinder of offenses, but as to appellant a charge of the same offense in different modes. *Thompson v. Commonwealth, 1 Metcalf (Ky.), 13.*

3. Statute of Limitations. Time of first indictment excluded.

The offense was committed fifteenth of June, 1880, and, counting out the time during which the first indictment was pending, the second was not barred by the statute of limitations.

Entering a *nol. pros.* on the first indictment was the same in legal effect as setting it aside.

Fleeing from justice.

Moreover, if there can be any doubt about the effect of the pendency of the first indictment in preventing the statute bar to the second, it was proved on the trial that appellant absconded from Quitman, in Van Buren County, his place of residence and business, in a day or two after the commission of the offense, and remained absent until December, 1882, when he returned and surrendered himself into custody ; and that during his absence he was in Cross County, under an assumed name.

This was fleeing from justice, within the meaning of the statute, and prevented the bar. It was not necessary for appellant to leave the State, to constitute a fleeing from justice, within the meaning of the statute; it was enough that he absconded from his home, his known place of abode, and secreted himself in Cross County, to avoid arrest and prosecution for the offense. *United States v. O'Brian, 3 Dillon, 381; State v. Washburn, 48 Mo., 240.*

4. Evidence. Witnesses: Accomplice: Corroboration.

III. It is next submitted that appellant was convicted upon the uncorroborated testimony of an accomplice.

The State proved the *corpus delicti* by John W. Sivils. At the time of the commission of the crime, fifteenth June, 1880, he and his family were living with William Ligon, his father-in-law, at Quitman, and appellant, Lay, lived about 250 yards from him. Between 12 and 1 o'clock of the night of the fifteenth June, after Sivils had gone to bed, he was called, went on to the front porch, and was shot, badly wounded but not killed.

The State proved by A. R. Evans that Sivils was shot by

Thomas Neal, who had been hired by appellant to kill him. The indications are that Evans was a boy, and he testified that he was with Neal under compulsion and fear, when appellant hired him to kill Sivils, and when he shot him.

The court, in its general charge to the jury, which was full and fair, and not objected to by appellant, defined an accomplice, and left it to the jury to determine whether Evans was in fact an accomplice. The court also read to the jury section 1932 of Gantt's Digest: "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." And the court said to the jury: "If you find that Evans was an accomplice in the commission of the crime, then you can not convict defendant Lay, on his testimony alone. It must be corroborated as required by law." And, after reading to the jury the above section of the statute, the court continued: "The corroboration is not sufficient if the evidence merely shows that Sivils was shot, and the circumstances at the immediate time of the shooting. But if Evans' testimony is sustained and corroborated by other witnesses, facts or circumstances tending to connect defendant with the commission of the offense, and if, taking this evidence altogether, you are satisfied beyond a reasonable doubt of defendant's guilt, you should say so. You are the sole judges of the facts in evidence, and of the credibility of witnesses. You must find the facts, and apply the law as given by the court," etc.

The general charge sufficiently covered the ground of the third instruction moved for appellant, and refused by the court, which related to the credibility of an accomplice.

The story of the witness, R. A. Evans, was in substance as follows:

"He lived with his father, three miles from Quitman, where Thomas Neal, his brother-in-law, also lived. After he had gone to bed on the night of the fifteenth of June, 1880, Neal roused him up and asked him to go to Quitman with him. Said he had lost a letter between there and Quitman, and would not have any one find it for $3,000. He went with Neal, and when they came to a clearing made by his father, about a quarter of a mile from Quitman, they hitched their horses, and Neal pulled a shot-gun out of a brush pile, and then they went on to appellant's store. Appellant, Bowers and Hall were in the store. They got up, lighted a lamp and let them in. Appellant and Bowers took them into a back room, and the door was locked; they were given whisky, and appellant furnished Neal with powder and shot to load the gun. Appellant asked Neal what he brought witness for, and Neal replied, "to swear damned lies for him." After Neal loaded his gun, he said he was going to kill John Sivils, and Lay was to give him two hundred dollars, and if witness told his father or any one else, they would kill him. Lay said Sivils had indicted him for selling whisky, and it would cost him $500, and if Neal would kill Sivils he would give him $200. Witness did not halloo because he was afraid. Lay let Neal and him out at the front door of the store. They made him go. Neal and he went to William Ligon's house where Sivils lived. Neal told witness to halloo Sivils up, and he told him he would not. Neal said he must. Witness knew he was a dangerous man, and was afraid to refuse. Witness hallooed three times, Sivils came to the door, and Neal fired the gun. Witness saw Sivils fall, and then ran off with Neal. Witness felt bad about it and wanted to tell his father, but was afraid to do

so until after Neal was arrested, and then he told his father," etc.

It was proven by other witnesses that appellant had emnity against Sivils because he was a witness in a prosecution against him for selling liquor at Quitman, where it was prohibited.

John J. Hall, a witness for the State, was at appellant's store when Neal and Evans got there. He corroborated the testimony of Evans as to what occurred there, except as to what was said in the back room, where he was not admitted. He was suspicious that something wrong was going on, and left the store before the other parties came out of the back room.

The jury may have believed that Evans was not willfully an accomplice, but acted under duress. But if they believed him to be an accomplice, his testimony was well corroborated as to the assault on Sivils, and the circumstances thereof, and there was some corroboration of his testimony as to appellant's connection with the crime, so that, upon the whole, we can not say that the verdict was without evidence to sustain it.

IV. Appellant objected to the second instruction given by the court for the State, but the objection is not urged here, and there is nothing in it. The substance of instruction is, that if the jury believe beyond a reasonable doubt that Neal shot Sivils with a loaded gun, as charged in the indictment, and that appellant in any way or manner advised or encouraged such shooting, before the commission of the same, and that Neal acted upon such advice or encouragement, the jury should find defendant guilty.

The court read to the jury the sections of the Digest defining and providing for the punishment of principals and accessories before the fact, etc.

This disposes of all the questions presented to and de-cided by the court below, appearing in the transcript, and argued here.

Affirmed.