[S.F. No. 23654. Apr. 26, 1978.]

ANTHONY GILBERT PIZANO, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

### COUNSEL

Charles B. Flood III, · Public Defender, and Thomas A. Simonian, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Jay W. Powell, District Attorney, Brenton A. Bleier, Assistant District Attorney, David F. Rodriguez, Deputy District Attorney, Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Charles J. James, Deputy Attorneys General, for Real Party in Interest.

Cecil Hick, District Attorney (Orange), Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, as Amici Curiae on behalf of Real Party in Interest.

### OPINION

**CLARK, J.—** ▮ The question presented is whether an armed robber—using his victim as a shield to effect escape—is guilty of murder under an implied malice theory when a third party—unaware of the victim's presence—accidentally kills the victim while trying to prevent the robber's escape.

Statements made by this court in *People* v. *Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365] suggest that the robber is *not* guilty of murder because the third party, not even realizing that the victim is present, is not responding to the robber's malicious conduct in using the victim as a shield. He is reacting, instead, to the robbery itself, trying to foil it by preventing the escape.

We conclude that the *Gilbert* test—whether the killing was in response to malicious conduct additional to the underlying felony—is inapplicable to shield cases. As we explain below, the function of the *Gilbert* test is to provide the trier of fact with a guideline for determining whether the malicious conduct, rather than the underlying felony, *proximately caused* the victim's death. In a shield case this determination may be made without employing that test. The third party in this case did not fire the

fatal shot in response to the robber's malicious conduct in using the victim as a shield. Nevertheless, there is ample evidence from which the trier of fact may conclude that the victim's death was proximately caused by that malicious conduct rather than by the robbery itself.

The factual context in which this question arises was developed at petitioner's preliminary hearing.

Two men, one carrying a pistol, forced their way into a house shared by Mr. Vaca and Miss Coverdell, robbing them of 13 cents. Coverdell identified the robber with the pistol as codefendant Esquivel and testified petitioner resembled the second robber.

Mrs. Fernandez, her children and Mr. Cuna lived next door to Vaca. The children informed Fernandez and Cuna that two masked men had entered Vaca's house. Fernandez ran next door, peered through a window, and observed a masked man; she returned home and called the police. Arming himself with a rifle, Cuna went to Vaca's house, kicked the door partially open, and saw two men, one carrying a pistol. Cuna returned home and waited on his porch.

Mistaking Cuna for a policeman, petitioner told Esquivel the police were outside. Esquivel responded by grabbing Vaca, twisting his arm behind his back, pointing the pistol at him, and stating he would shoot Vaca if the police intervened. Petitioner opened the door and ran out of the house, followed by Vaca and Esquivel.

Not realizing Vaca was present, Cuna shot at Esquivel as they came out of the house. He fired "because they were robbing" and "because the police didn't arrive." Esquivel was not pointing the pistol at Cuna when Cuna fired. When he recognized Vaca, Cuna did not fire again.

As Vaca fell mortally wounded by Cuna's shot, petitioner and Esquivel fled.

A police officer testified that petitioner stated that he had acted as a lookout while Esquivel and another man went into Vaca's house, that while waiting outside he saw someone carrying a gun come out of the Fernandez house, and that he ran to Vaca's house, told the other robbers someone was coming, and then ran away. Petitioner further stated Esquivel later told him that Esquivel had used Vaca as a shield, that Vaca was shot by the person next door, and that Esquivel did not fire a

shot. Petitioner subsequently made another statement in which he said that he had gone into Vaca's house and that he and Esquivel had together taken Vaca from the house.

The magistrate ordered both petitioner and Esquivel held to answer for two counts of robbery, one count of conspiracy to commit robbery and one count of burglary. However, concluding that implied malice had not been shown, he refused to hold either to answer for murder. In the information, however, the People elected to charge petitioner with murder as well. Petitioner's motion to dismiss the charge of murder pursuant to section 995 was denied. He petitions for writ of prohibition to restrain the superior court from further proceeding on the murder count other than to dismiss it.[1] The petition is denied.

An information charging an offense not named in the commitment order will not be upheld unless the evidence taken by the magistrate shows that the offense was committed and that it arose out of the transaction which was the basis for commitment on a related offense. (*Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241].)

This rule is subject to the qualification that an offense not named in the commitment order may not be added to the information if the magistrate made *factual findings* which are fatal to the asserted conclusion that the offense was committed. A clear example of this would be when the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti. When, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches the ultimate *legal conclusion* that it does not provide probable cause to believe the offense was committed, such conclusion is open to challenge by adding the offense to the information. Addition of the offense is, of course, subject to attack in the superior court under Penal Code section 995, to review by pretrial writ and, finally, to appellate review from the judgment of conviction. (*People* v. *Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478], explaining *Jones* v. *Superior Court, supra,* 4 Cal.3d 660.)

In this case the magistrate's explanation of his refusal to hold petitioner and Esquivel for murder clearly reveals that his determination that implied malice was not shown was a legal conclusion, not a finding

[1]Esquivel was tried separately and found guilty of first degree murder.

of fact as that term is used in *Jones.* Therefore, the People were entitled to challenge his action by recharging the murder count.

■ Turning to the merits, it is beyond dispute that the killing of Vaca arose out of the transaction forming the basis for petitioner's commitment on the other offenses. The question we must resolve is whether the evidence presented to the magistrate provided probable cause to believe that the killing constituted murder.

We begin by reviewing *People v. Washington* (1965) 62 Cal.2d 777 [44 Cal.Rptr. 442, 402 P.2d 130] and *People v. Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365].

In *Washington,* the defendant was convicted of murder under the felony-murder doctrine for participating in a robbery in which his accomplice was killed by the victim of the robbery. This court reversed on the ground that the felony-murder doctrine is applicable only to a killing committed by the felon himself. (62 Cal.2d at p. 781.) However, this court further stated: "[W]hen the defendant . . . intentionally commits acts that are likely to kill with a conscious disregard for life, he is guilty of murder even though he uses another person to accomplish his objective. (*Johnson v. State,* 142 Ala. 70 [38 So. 182, 2 L.R.A.N.S. 897]; see also *Wilson v. State,* 188 Ark. 846 [68 S.W.2d 100]; *Taylor v. State,* 41 Tex.Crim.Rep. 564 [55 S.W. 961].)

"Defendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' (*People v. Thomas,* 41 Cal.2d 470, 480 [261 P.2d 1] [concurring opinion]), and it is unnecessary to imply malice by invoking the felony-murder doctrine." (62 Cal.2d at p. 782.)

In *Gilbert,* the defendant and a man named Weaver robbed a savings and loan association. Gilbert shot and killed a policeman. Another policeman then shot and killed Weaver. Defendant King drove the getaway car. This court held that the trial court erred in giving a felony-murder instruction. "Although the evidence in the present case would support a conviction of first degree murder on the ground that Weaver was killed in response to a shooting initiated by Gilbert, the court did not instruct the jury on that ground, but gave an erroneous instruction that defendants could be convicted of murder for that killing

without proof of malice and solely on the ground that they committed a robbery that was the proximate cause of their accomplice's death. This instruction withdrew from the jury the crucial issue of whether the shooting of Weaver was in response to the shooting of [the slain policeman] or solely to prevent the robbery." (63 Cal.2d at pp. 703-704.) For the guidance of the trial court on the retrial of King, this court then set forth certain principles which may be invoked to convict a defendant of first degree murder for a killing committed by another. The principles are:

"(1) *Proof of malice aforethought.* 'Murder is the unlawful killing of a human being, with malice aforethought.' (Pen. Code, § 187.) Such malice is implied under Penal Code section 188 when the defendant or his accomplice ' "for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death." ' [Citations.] Initiating a gun battle is such an act.

"(2) *The killing must be attributable to the act of the defendant or his accomplice.* When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice. [Citations.]

"(3) *Vicarious criminal liability.* Under the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design. [Citations.]

"(4) *The application of Penal Code section 189.* When murder is established under Penal Code sections 187 and 188 pursuant to the principles defined above, section 189 may properly be invoked to determine the degree of that murder. Thus, even though malice aforethought may not be implied under section 189 to make a killing

murder unless the defendant or his accomplice commits the killing in the perpetration of an inherently dangerous felony [citations], when a murder is otherwise established, section 189 may be invoked to determine its degree." (63 Cal.2d at pp. 704-705.)

■ Applying these principles, it is clear, first, that the felony-murder doctrine is inapplicable here because the fatal shot was fired by someone other than the felons. (*People* v. *Washington, supra,* 62 Cal.2d at p. 781; *People* v. *Gilbert, supra,* 63 Cal.2d at p. 705; *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131].)

■ However, contrary to petitioner's contention, the principles announced in *Gilbert* and its progeny are not limited to cases in which the person actually committing the homicide is either a victim of the felony or a police officer. Although *Gilbert* and subsequent cases refer only to victims and police officers, none states that the vicarious liability/implied malice doctrine is limited to such persons, and no logical basis exists for such a limitation.

■ The magistrate erred in concluding that the People failed to prove implied malice. Initiating a gun battle is not the only means of manifesting malice. The malicious acts of Esquivel *in addition to the robbery* are abundantly evidenced. Taking Vaca as a hostage, pointing a pistol at him, stating he would be shot if the police intervened, and then using him as a shield provided a more than sufficient basis for an inference of malice. Indeed, it has been argued that malice is *express* in such cases on the ground that using the victim as a shield is a "direct and deliberate creation of immediate lethal danger to the deceased and to him alone." (Morris, *The Felon's Responsibility for the Lethal Acts of Others* (1956) 105 U.Pa.L.Rev. 50, 63.)

We now reach the question which began our discussion. Petitioner contends that the People failed to satisfy the second *Gilbert* principle—that "[t]he killing must be attributable to the act of the defendant or his accomplice." His argument rests on two passages in *Gilbert.* First, in explaining the foregoing principle, this court stated that a defendant is guilty of murder "[w]hen the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills *in reasonable response to such act . . . .*" (63 Cal.2d at p. 704, italics added.) Second, applying the foregoing principle as explained to the facts of that case, the *Gilbert* court stated that the instruction given there was erroneous insofar as it

"withdrew from the jury the crucial issue of whether the shooting of [a cofelon] was in response to the shooting of [a policeman] or solely to prevent the robbery." (*Id.*)

If Cuna had realized that Vaca was being used as a shield and had fired "in reasonable response" to this malicious act, then Esquivel and, as his accomplice, petitioner would clearly be liable for murder under *Gilbert.* However, as petitioner points out, Cuna did *not* fire in response, whether reasonable or unreasonable, to Vaca's being used as a shield; he was not even aware of Vaca's presence. Instead, Cuna fired because the police had not arrived and the robbers were about to escape. In short, petitioner concludes, Cuna fired "solely to prevent the robbery" which *Gilbert* states to be insufficient to create liability for murder on the part of either Esquivel or petitioner.

The People respond that culpability should not rest on the state of mind of the person firing the fatal shot but on the conduct of the defendant or his accomplice. They point to this court's statement in *Washington* that: "In every robbery there is a possibility that the victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken as this case demonstrates. To impose an additional penalty for the killing would discriminate between robbers, not on the basis of any difference in their own conduct, but solely on the basis of the response by others that the robber's conduct happened to induce." (*People* v. *Washington, supra,* 62 Cal.2d at p. 781.) Adopting petitioner's position would, the People argue, impose an additional penalty for a killing solely on the basis of the state of mind in others that the felon's additional malicious conduct happened to induce.

The People contend that the question whether a killing was "in reasonable response" to the malicious conduct should be treated as "an objective proximate cause determination, and not a subjective response determination." They argue that the use of the term "independent intervening cause" in the same passage indicates that the *Gilbert* court had proximate cause in mind.[2]

The use of that term does appear to so indicate for this court subsequently stated in *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 583 [91 Cal.Rptr. 275, 477 P.2d 131], that "[i]f the trier of fact concludes that ... [the] death [of one of the robbers] *proximately resulted* from acts of

---

[2]The passage in question is quoted in full at page 135, *ante.*

petitioner's accomplices done with conscious disregard for human life, the natural consequences of which were dangerous to life, then petitioner may be convicted of . . . murder."[3] (Italics added.)

We need not overrule *Gilbert* in order to conclude there is probable cause to believe that Esquivel proximately caused Vaca's death by using him as a shield. *Gilbert* does not state that the only circumstance in which a killing is attributable to the malicious act of the defendant or his accomplice is when the third person's action is a reasonable response to that act. Proximate cause problems in criminal cases cannot be solved by applying a simple rule-of-thumb applicable to every conceivable fact situation. (See Perkins on Criminal Law (2d ed.) pp. 693-695.)

The police officer in *Gilbert* may well have fired because he and his brother officer were fired upon. Returning the felon's fire would certainly have been a reasonable response under the circumstances. Therefore, the question of liability in such a case becomes, to use the People's term, a "subjective" one: Did the officer fire in response to the felon's additional malicious conduct or simply in response to the felony itself?

However, the reasonable response test is clearly inappropriate in shield cases. A police officer would not ordinarily shoot at a felon *because* the felon was using a hostage as a cover. The reasonable response in such a situation would ordinarily be to withhold fire lest the hostage be further endangered. The felon foresees this, of course. One of the primary purposes of using a hostage as a shield is to deter the police from countering force with force.

However, if for example the officer is a sharpshooter who has a good angle for a shot, he may fire at the felon *in spite of* the hostage's being used for cover. Or the officer may accidentally hit the hostage while firing at the felon's accomplice. Or, as was true of Cuna, the officer may simply be unaware of the hostage's presence. The felon foresees these possibilities as well for, if one of the purposes of using a hostage as a shield is to deter hostile fire, the other is to absorb it.

As we stated earlier, the function of the reasonable response test in a *Gilbert* situation is to provide the trier of fact with a guideline for

---

[3] *Taylor* was overruled in *People* v. *Antick* (1975) 15 Cal.3d 79, 92, footnote 12 [123 Cal.Rptr. 475, 539 P.2d 43], only insofar as it held that an accomplice's conduct that may have contributed to his own death could properly be considered in assessing the petitioner's liability therefor.

determining whether the malicious conduct rather than the underlying felony proximately caused the victim's death. In a shield case this determination may be made without employing that test. Cuna did not fire the fatal shot in response to Esquivel's malicious conduct in using Vaca as a shield. Nevertheless, there is ample evidence from which the trier of fact may conclude that Vaca's death was proximately caused by that malicious conduct rather than by the robbery itself.

■ Under the rules defining principals and criminal conspiracies, petitioner may be found guilty of murder for a killing attributable to the act of his accomplice if the act was committed in furtherance of the common design. (*People* v. *Gilbert, supra,* 63 Cal.2d at p. 705.) And if petitioner is found guilty of murder under such rules, section 189 of the Penal Code may be invoked to determine the degree of the crime. (*Id.*)[4]

---

[4]The dissent proposes to overrule this aspect of *Gilbert.*

For the convenience of the reader, we repeat the holding of *Gilbert* the dissent would overrule as conflicting with the language of Penal Code section 189. "When murder is established under Penal Code sections 187 and 188 pursuant to the principles defined above, section 189 may properly be invoked to determine the degree of that murder. Thus, even though malice aforethought may not be implied under section 189 to make a killing murder unless the defendant or his accomplice commits the killing in the perpetration of an inherently dangerous felony [citations], when a murder is otherwise established, section 189 may be invoked to determine its degree." (*People* v. *Gilbert, supra,* 63 Cal.2d at p. 705, citations omitted.) In *Taylor* v. *Superior Court, supra,* 3 Cal.3d 578, this court reaffirmed this holding. (3 Cal.3d at p. 583, fn. 2, overruled on other grounds in *People* v. *Antick, supra,* 15 Cal.3d 79, 92, fn. 12 (see fn. 3, *ante*).)

The argument made by the dissent for overruling *Gilbert* in this respect proceeds as follows.

Section 189 of the Penal Code provides in pertinent part: "All murder . . . which is committed in the perpetration of, or attempt to perpetrate . . . robbery. . . . is murder of the first degree . . . ."

In *People* v. *Washington, supra,* 62 Cal.2d 777, 781, this court held that "[w]hen a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber [under the felony-murder rule], for the killing is not committed by him in the perpetration or attempt to perpetrate robbery."

Reading section 189 in light of the quoted passage from *Washington,* the dissent concludes that the *Gilbert* court erred insofar as it held that section 189 may be invoked to determine the degree of a murder established under the implied malice/vicarious liability doctrine. Resort is made to the implied malice/vicarious liability doctrine, the dissent points out, when malice aforethought cannot be imputed under the felony-murder doctrine because neither the robber nor his accomplices committed the killing. But if the principals to the robbery did not commit the killing, the dissent reasons, then the killing was not committed in the perpetration of the robbery (*Washington*) and, accordingly, the "in the perpetration of . . . robbery" provision of section 189 cannot be invoked to determine the degree of the murder.

This argument is based on an incomplete understanding of *Gilbert.*

To demonstrate this we will discuss the application of the now familiar principles of implied malice in the context of a hypothetical case in which a lone robber initiates a gun battle which results in the killing of the robbery victim by a policeman.

Although malice aforethought cannot be imputed to the robber under the felony-

California's vicarious liability theory has had a unique development. (See, e.g., Annot. 56 A.L.R.3d 239, 268, § 10.) Therefore, we cannot expect to find out-of-state decisions totally responsive to questions generated by it. Nevertheless, the decisions of other states in shield cases support the conclusions drawn herein. (See, e.g., *Wilson* v. *State* (1934) 188 Ark. 846 [68 S.W.2d 100]; *Taylor* v. *State* (1900) 41 Tex.Crim. 564 [55 S.W. 961]; see also, Annot. 56 A.L.R.3d 239, 261, § 6.)

In *Wilson*, the defendant and his accomplices, knowing they had been discovered in the act of robbing a bank, used a teller as a shield in an escape attempt. As they emerged from the bank the teller was killed by a shot fired at the robbers by a lawman waiting outside. *Wilson* held that the defendant's action was just as much the cause of the teller's death as if the defendant had himself fired the fatal shot and that such conduct constituted murder. "[T]he robbers compelled [the teller], over his objections and against his will, to accompany them from a place of safety, so far as outsiders were concerned, to a place known by them to be a place of danger from those on the outside. They knew that they had been discovered and apprehended danger from the outside, else they would not have taken [the teller] with them. They wished to use him as a breastwork, as it were, or they thought perhaps the outsiders would not shoot at them for fear of killing [the teller]. In doing this they . . . caused [his] death." (68 S.W.2d at p. 102.)

*Taylor* presented similar facts. There the robbers used a human shield while attempting to rob a train, and a passenger in resisting the attempted robbery accidentally shot and killed the man used as a shield. "The whole question here is one of causal connection. If the appellant here set in motion the cause which occasioned the death of the deceased,

murder rule because he did not commit the killing, it can be imputed to him under Penal Code section 188 for by initiating a gun battle a robber " ' "for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death." ' " (*Gilbert* at p. 704.) By hypothesis, the policeman killed the victim in reasonable response to the robber's initiation of the gun battle. "In such a case," *Gilbert* held, "the killing is attributable, not merely to the commission of the felony, but to the intentional act of the defendant . . . committed with conscious disregard for life." (*Id.,* at p. 704.) Therefore, under rules expounded in *Gilbert* with which the dissent expresses no disagreement, the robber *is* guilty of murder.

The question remains whether the murder was committed "in the perpetration of . . . robbery." The killing itself, having been committed by the policeman to thwart the robbery, cannot be said to have been committed in perpetration of it. *But the act which made the killing a murder attributable to the robber—initiating the gun battle—was committed in the perpetration of the robbery.* Therefore, as *Gilbert* held, section 189 may properly be invoked to determine that the murder is of the first degree.

we hold it to be a sound doctrine that he would be as culpable as if he had done the deed with his own hands. . . . [The felons] chose to put deceased in a dangerous place, in order to consummate their purpose, regardless of whether he was killed or not. . . . His life was taken on account of their direct and lawless act, and they are responsible for his murder, whether it was occasioned by their own volition or by the shots of their adversaries; and their act was the proximate cause of the destruction of his life, and they cannot escape the consequences." (55 S.W. at pp. 964-965.)

*Wilson* and *Taylor* were cited with apparent approval in *People* v. *Washington, supra,* 62 Cal.2d 777, at page 782, for the proposition that "when the defendant intends to kill or intentionally commits acts that are likely to kill with a conscious disregard for life, he is guilty of murder even though he uses another person to accomplish his objective." Petitioner asserts that in *Wilson* and *Taylor* the persons firing at the felons "apparently" were aware of the human shields. However, neither case indicates that such awareness is a prerequisite to the felon's liability for the homicide.

The petition for writ of prohibition is denied.

Tobriner, J., Mosk, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**BIRD, C. J.**—I respectfully dissent. In permitting petitioner to be tried for murder in the first degree, the majority's opinion directly conflicts with the specific language of Penal Code section 189 and carves out an impermissible exception which the Legislature never intended.

In California, murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought." (Pen. Code, § 187, subd. (a).)[1] The malice necessary for a murder conviction "may be express or implied. It is express when there is manifested a deliberate intention unlawfully[2] to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.)

[1]All statutory references herein are to the Penal Code.
[2]"Unlawfully" is defined as a killing which is neither excusable (§ 195) nor justifiable (§§ 196, 197).

Murder is divided into two degrees by statute. "All murder [1] which is perpetrated by means of a destructive device or explosive, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or [2] which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288,[3] is murder of the first degree; and *all other kinds of murders are of the second degree.*" (Italics added.) (§ 189.)

In the present case, the majority concedes that neither petitioner nor his accomplice fired the shot which killed Vaca (maj. opn., *ante,* at p. 136) and, therefore, petitioner may not be found guilty of murder—of any degree—on the basis of the felony-murder rule, since "[s]ection 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony. Indeed, in the present case the killing was committed to thwart a felony. *To include such killings within section 189 would expand the meaning of the words 'murder ... which is committed in the perpetration ... [of] robbery ...' beyond common understanding.*" (Italics added.) (*Washington, supra,* 62 Cal.2d at p. 781.)

Although the majority opinion holds that petitioner cannot be tried on a felony-murder theory, it finds there is sufficient evidence in the record to justify a trial of petitioner for murder on a vicarious liability/implied malice theory. The majority reasons that there is probable cause to believe that the death of Vaca was attributable to an act of implied malice by petitioner's accomplice and that petitioner may be held vicariously liable for this act.

Relying on *People* v. *Gilbert* (1965) 63 Cal.2d 690, 705 [47 Cal.Rptr. 909, 408 P.2d 365], reversed on other grounds (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], the majority holds that the killing here would be murder of the first degree, if it had been committed in the perpetration of one of the felonies enumerated in section 189. (Maj. opn., *ante,* at p. 139.) However, this proposition, concerning the degree of implied-malice murder, contradicts the *express* language of section 189, which specifies the two "kinds" of murder which may be first degree. One "kind" of first degree murder is a murder "perpetrated by means of

---

[3]This "kind" of first degree murder is the statutory enactment of the felony-murder doctrine. (*People* v. *Washington* (1965) 62 Cal.2d 777, 780-781, 783 [44 Cal.Rptr. 442, 402 P.2d 130].) It ascribes the existence of malice aforethought and also first degree punishment to any felon who kills another "in the perpetration of, or attempt to perpetrate," any of the enumerated offenses. (See, e.g., *People* v. *Ireland* (1969) 70 Cal.2d 522, 538 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].)

a destructive device or explosive, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing . . . ." None of these enumerated "means" was employed in petitioner's case. Therefore, the only other basis for a first degree murder finding is the felony-murder rule, i.e., a killing "committed in the perpetration of, or attempt to perpetrate, . . . robbery . . . ." However, as this court has repeatedly held and as the majority expressly concedes, a killing is not "committed in the perpetration of . . . robbery . . ." (§ 189) where, as here, the fatal shot is not fired by a principal in the robbery. (*Washington, supra,* 62 Cal.2d at p. 781; *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131]; *People* v. *Antick* (1975) 15 Cal.3d 79, 87 [123 Cal.Rptr. 475, 539 P.2d 43]; maj. opn., *ante,* at p. 136.)

Since the killing in the present case does not fall within either of these two categories, it obviously must be some other "kind" of murder. Section 189 unambiguously states that "*all* other kinds of murders are of the second degree." (Italics added.) The majority's conclusion that petitioner's "implied malice" murder (maj. opn., *ante,* at p. 131) would be first degree murder squarely contradicts this statutory law.[4]

Since it is axiomatic that this court should not create a rule that directly conflicts with a valid legislative enactment (*Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 654 [94 Cal.Rptr. 398, 484 P.2d 70]), this holding in the majority opinion and in *Gilbert, supra,* should not stand.

---

[4]While conceding that the *killing* of Vaca was *not* "committed in the perpetration of . . . robbery . . . ," the majority asserts that the *murder* of Vaca was, because Esquivel's *act* of using Vaca as a shield was committed in the perpetration of robbery. (Maj. opn., *ante,* fn. 4, at p. 140.)

Assuming, arguendo, the conceptual possibility of the majority's analysis, its goal can be achieved only by writing into section 189 a third "kind" of first degree murder not provided for by the Legislature, i.e., a murder in which "the act which made the killing a murder attributable to the robber . . . was committed in the perpetration of the robbery." (Maj. opn., *ante,* fn. 4, at p. 140.) To do so, however, expressly contradicts the Legislature's provision that "all other [nonenumerated] kinds of murder are of the second degree." (§ 189.)