Filed 3/9/23  P. v. Stefin CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TAVARES STEFIN,<br><br>    Defendant and Appellant. | B315497<br><br>(Los Angeles County<br>Super. Ct. No. BA227886) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Kennedy, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Charles S. Lee and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Convicted in 2005 on two counts of second degree murder, Tavares Stefin appeals from the superior court's order following an evidentiary hearing denying his 2019 petition for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] Stefin contends substantial evidence did not support the court's finding he could still be convicted under current law on the two murder counts as a direct aider and abettor of implied malice murder. We conclude substantial evidence supported the finding and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.  *A Jury Convicts Stefin on Two Counts of Second Degree Murder, and We Affirm*

One evening in February 2002, members of the Every Woman's Fantasy (or EWF) criminal street gang—including

---

[1]  Statutory references are to the Penal Code.

[2]  While "the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing" under section 1172.6 (*People v. Flores* (2022) 76 Cal.App.5th 974, 988), we rely in part on the factual summary in our opinion in Stefin's direct appeal (*People v. Bolden et al.* (Sept. 10, 2007, B186192) [nonpub. opn.] 2007 WL 2586460) to summarize background facts here. Neither party suggests the factual summary in that opinion was inaccurate or contends the superior court impermissibly relied on it in denying Stefin's petition for resentencing. We also rely on the record in Stefin's direct appeal, which included the trial transcript.

19-year-old Johnathan Bolden and 17-year-old Stefin—gathered at a townhouse with companions. Stefin was socializing with a group in a bedroom, Bolden with a group in a hallway, when Bolden got into an argument with a 14-year-old girl named Desiree Collins. During the argument Bolden brandished a nine-millimeter pistol he had been carrying that evening at his waist. Collins mocked him and dared him to shoot her. Bolden shot her in the head, killing her. At the direction of Bolden, whom the group considered a "big homie" and "shot caller," Stefin and others cleaned up the blood in the hallway while Bolden disposed of the girl's body. (*People v. Bolden et al.* (Sept. 10, 2007, B186192) [nonpub. opn.], 2007 WL 2586460 (*Bolden*).)

Bolden, other EWF members, and some associates had planned to rob a Caribbean restaurant the following morning. They were informed they would find a large quantity of marijuana and $500,000 in cash inside the restaurant. The original plan did not call for Stefin to participate, but after Bolden killed Collins, some of those who were supposed to participate were afraid of Bolden and dropped out. Stefin therefore agreed to participate, though he admitted to Bolden's girlfriend that he did not want to go. Asked later why he did not follow her advice not to participate, Stefin answered, "I always go with them, always." (*Bolden*, *supra*, B186192.)

So, the morning after Bolden killed Collins, he drove Stefin and another EFW member, Eddie Williams, to the restaurant to conduct the robbery. All three were armed: Stefin with a .22-caliber rifle, Bolden with the same nine-millimeter pistol he used to shoot Collins, and Williams with a .25-caliber handgun. Outside the restaurant the group encountered Carl Scott, a handyman who did odd jobs at the restaurant, sitting in his car.

Bolden ordered Scott out of the car at gunpoint.  Bolden told Scott to knock on a side door of the restaurant and tell the people inside to open the door.  Williams stood nearby, gun in hand, to ensure Scott complied.  When the door opened, Bolden, Stefin, and Williams rushed inside behind Scott.  (*Bolden*, *supra*, B186192.)

Inside the restaurant were two cooks, Rodney Tomlin and Emard Peart.  When Bolden and the others ran in through the door, Tomlin jumped out a nearby window and hid in an area beneath the restaurant's kitchen.  Bolden pointed his gun at Peart and said, "Don't move.  Get on your knees."  Peart and Scott complied.  Peart asked what Bolden wanted.  Bolden told him he wanted marijuana and money.  Peart said no one at the restaurant had anything to do with growing or selling marijuana. Bolden pointed his gun, told Peart to shut up, and demanded his wallet.  Peart refused to give up his wallet, but gave Bolden $46 in cash, which Bolden pocketed.  (*Bolden*, *supra*, B186192.)

Bolden went to a storeroom at the back of the restaurant, where he began to knock cups, plates, and other supplies from the shelves in a search for marijuana and cash.  Williams stood in the doorway, brandishing his gun.  Meanwhile, armed with his rifle, Stefin led Peart to the cash register at the front of the restaurant.  Neither Stefin nor Peart could open the register. Stefin followed Peart to the kitchen, so that Peart could attend to the chicken he was frying. (*Bolden*, *supra*, B186192.)

Suddenly, Scott ran into the storeroom and struck Bolden in the neck with a meat cleaver.  As blood gushed from Bolden's neck, Scott turned and attacked Williams.  Bolden fired multiple shots, striking both Scott and Williams.  When Stefin reached the storeroom, he found Scott dead and Williams badly wounded.

4

Stefin took Williams to the hospital, where Williams was pronounced dead. Bolden survived, as did Peart, who escaped from the restaurant during the melee.

In May 2005, in connection with the deaths of Scott and Williams, a jury, instructed on felony murder and the natural and probable consequences doctrine as bases for murder liability, convicted Stefin on two counts of second degree murder. (§ 187, subd. (a).) The jury also convicted him of second degree robbery of Peart (§ 211) and second degree burglary of the restaurant (§ 459) and found true various criminal street gang and firearm allegations. On each murder count, the trial court sentenced Stefin to a prison term of 15 years to life, plus 25 years to life for the related enhancements, and ordered the sentences on the two convictions to run concurrently. The court stayed under section 654 execution of the sentences it imposed for the remaining convictions. On Stefin's appeal from the judgment, we affirmed his convictions. (*Bolden*, *supra*, B186192.)

B.      *The Superior Court Twice Denies Stefin's Petition for Resentencing*

In April 2019 Stefin petitioned for resentencing under newly enacted former section 1170.95. The superior court summarily denied the petition on the ground Senate Bill No. 1437, which created former section 1170.95, was unconstitutional. We reversed. (*People v. Stefin* (July 22, 2020, B302765) [nonpub. opn.], 2020 WL 4199631 at p. 2.)

On remand, the superior court issued an order to show cause and held an evidentiary hearing on Stefin's petition. The parties relied on the record of conviction, including the trial transcripts, and did not present new evidence. The court

determined that whether Stefin could still be convicted of murder under a felony murder theory was not an issue because the jury—instructed that finding Stefin guilty of murder on a felony murder theory required finding him guilty of murder in the first degree—found Stefin not guilty of murder in the first degree. The People argued Stefin could still be convicted of murder under a theory of aiding and abetting an implied malice murder.

The superior court agreed with the People. The court cited the Supreme Court's holding in *People v. Gentile* (2020) 10 Cal.5th 830 (*Gentile*) that, "notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile*, at p. 850.) The superior court found that, under this theory of murder liability, the People "still to this day can prove" Stefin guilty beyond a reasonable doubt on both second degree murder counts. The court denied Stefin's petition, and Stefin timely appealed.

## DISCUSSION

### A. *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*Gentile*, *supra*, 10 Cal.5th at pp. 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188,

6

subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957).[3] Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). The latter provision requires the People to prove specific facts relating to the defendant's culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); the defendant, though not the actual killer, with the intent to kill assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision. (§ 189, subd. (e)(3); see *Strong*, at p. 708; *Gentile*, at p. 842.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the changes the Legislature made effective 2019 to the definitions of the crime. (See *People v. Strong, supra*, 13 Cal.5th at p. 708; *People v. Lewis, supra*, 11 Cal.5th at p. 957; *Gentile, supra*, 10 Cal.5th at p. 843.) If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested. (*Lewis*, at pp. 962-963; see § 1172.6, subd.

---

[3]     The Legislature later renumbered former section 1170.95 to section 1172.6 without changing the text of the statute. (See *People v. Strong, supra*, 13 Cal.5th at p. 708, fn. 2.)

7

(b)(1)(A), (3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1172.6, subd. (c).)

Where, as here, the petitioner makes the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*; see *People v. Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

On appeal from an order denying a petition under section 1172.6, we review the trial court's factual findings for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125; *People v. Richardson* (2022) 79 Cal.App.5th 1085, 1090.) We "'"examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.'" [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a

8

rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; see *Guiffreda*, at p. 125.) "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 57; see *People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)

### B. *The Superior Court Did Not Err in Denying Stefin's Petition*

Stefin contends substantial evidence did not support the superior court's finding he "is guilty of implied malice murder." Specifically, Stefin argues "he cannot be held liable for the killings of the two victims because the actus reus required for murder is missing."

#### 1. *Aiding and Abetting an Implied Malice Murder*

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) Malice "may be express or implied." (§ 188, subd. (a).) A person has acted with implied malice "if he (1) intentionally committed an act; (2) the natural and probable consequences of the act were dangerous to human life; (3) at the time he acted, he knew his act was dangerous to human life; and (4) he deliberately acted with conscious disregard for human life." (*People v. Navarette* (2016) 4 Cal.App.5th 829, 843-844; accord, *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 587-588 (*Glukhoy*).) "In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143; accord, *People v.*

9

*Cravens* (2012) 53 Cal.4th 500, 507; *People v. Palomar* (2020) 44 Cal.App.5th 969, 974.)

In addition, under principles of direct aiding and abetting, "an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.'" (*Gentile*, *supra*, 10 Cal.5th at p. 843; cf. *id.* at p. 844 ["Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent."].) An accomplice thus may be guilty of second degree murder for directly aiding and abetting another's commission of an implied malice murder. (*Glukhoy*, *supra*, 77 Cal.App.5th at p. 588; accord, *People v. Langi* (2022) 73 Cal.App.5th 972, 979; *People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 499 (*Valenzuela*); *People v. Powell* (2021) 63 Cal.App.5th 689, 711-714; see *Gentile*, at p. 850.) This theory of murder liability remains valid notwithstanding the Legislature's changes to the definition of the crime of murder. (*Gentile*, at p. 850; see *Valenzuela*, at p. 499 [statutory changes prohibiting aiding and abetting liability under a natural and probable consequences theory do not preclude a conviction for directly aiding and abetting implied malice murder because "direct aiding and abetting of an implied malice murder is based on 'the aider and abettor's *own* mens rea'"].)

"In the context of implied malice, the actus reus required of the perpetrator is the commission of a life endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life endangering act. Thus, to be liable for an implied malice murder, the direct aider

10

and abettor must, by words or conduct, aid the commission of the life endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*People v. Powell, supra*, 63 Cal.App.5th at p. 713; accord, *Glukhoy, supra*, 77 Cal.App.5th at p. 588; see *ibid.* [by "'life endangering act' we mean an act for which the natural and probable consequences are dangerous to human life and proximately caused death"].)

> 2. *Substantial Evidence Supported the Superior Court's Finding Stefin Directly Aided and Abetted Implied Malice Murder*

Stefin does not dispute that substantial evidence supported the finding Bolden acted with implied malice in killing Scott and Williams.[4] And, indeed, from the way Bolden threatened others with his gun at the restaurant, repeatedly giving orders at gunpoint, the superior court could reasonably infer he was aware his using a loaded nine-millimeter pistol to carry out a robbery endangered other people's lives. (See *Valenzuela, supra*, 73 Cal.App.5th at p. 502 [implied malice "can exist even if the act results in an accidental death," and "like all other elements of a crime, implied malice may be proven by circumstantial evidence"].)

Did Stefin aid and abet those implied malice killings? Substantial evidence supported the court's finding he did. As for

---

[4] A separate jury found Bolden guilty of first degree murder for killing Scott and Williams. (*Bolden, supra*, B186192.)

11

the actus reus requirement, Stefin aided in Bolden's commission of the life endangering act (i.e., carrying out a robbery with a nine-millimeter pistol) by, at a minimum, helping overcome and subdue the occupants of the restaurant and then helping keep them subdued by his armed presence. The superior court could also reasonably infer Stefin had the requisite mens rea. The robbery was planned; Stefin agreed to participate; and from at least the moment Bolden ordered Scott out of his car at gunpoint, it was apparent Bolden intended to use his pistol to carry out the robbery—facts suggesting that Stefin knew Bolden intended to carry out a robbery using the pistol and that Stefin intended to aid him in it. Especially given Stefin knew Bolden was impetuous enough to shoot a young girl to death after a brief confrontation the night before, the superior court could also reasonably infer Stefin knew Bolden's use of a loaded pistol to carry out a robbery was dangerous to human life. That Stefin nevertheless continued to assist Bolden in that act demonstrated Stefin's conscious disregard for human life.

Stefin argues that, under the provocative act doctrine, more was required to convict him for the murders of Scott and Williams. Courts developed the provocative act murder doctrine to address murder liability in circumstances in which neither the defendant nor his accomplice, but a third party—such as a robbery victim or a responding police officer—committed the killing.[5] (See *People v. Cervantes* (2001) 26 Cal.4th 860, 867-869;

---

[5] It "was originally conceived as a form of implied malice murder, derived as an offshoot of the felony-murder rule." (*People v. Cervantes* (2001) 26 Cal.4th 860, 867; see *People v. Washington* (1965) 62 Cal.2d 777, 783 ["for a defendant to be guilty of murder under the felony-murder rule the act of killing

12

*Pizano v. Superior Court* (1978) 21 Cal.3d 128, 134-139; *People v. Gilbert* (1965) 63 Cal.2d 690, 704-705; *People v. Washington* (1965) 62 Cal.2d 777, 781-782.)  "Reduced to its essence," the doctrine provides that, "'when the perpetrator of a crime—with a conscious disregard for life—intentionally commits an act that is likely to result in death and the crime victim [or other third party] kills in reasonable response to that act, the perpetrator is guilty of murder.'"[6]  (*People v. Mejia* (2012) 211 Cal.App.4th 586, 602-603; see *Cervantes*, at p. 868; but see *Pizano*, at p. 138 ["the reasonable response test is clearly inappropriate" in human-shield cases, where the proper test is whether the act committed with conscious disregard for life proximately caused the killing].)  "If the underlying crime which provokes the killing does not require an intent to kill, the provocative conduct must be an act beyond that necessary simply to commit the crime."  (*Mejia*, at p. 604; accord, *People v. Briscoe* (2001) 92 Cal.App.4th 568, 583; see *In re Joe R.* (1980) 27 Cal.3d 496, 503, 516 [reversing a murder finding under the provocative act doctrine because the

---

must be committed by the defendant or by his accomplice acting in furtherance of their common design."].)

[6]     The provocative act doctrine "has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander."  (*People v. Cervantes*, *supra*, 26 Cal.4th at p. 867; see *People v. Mejia* (2011) 211 Cal.App.4th 586, 602-603.)

evidence showed "no life-threatening acts on his part other than those implicit in the crime of armed robbery"].)

Stefin acknowledges the provocative act murder doctrine does not apply here because the killer was his accomplice, not a third party. "But," he argues, "the theoretical underpinnings of that doctrine nevertheless provide guidance as to the requirements for liability as an accomplice to implied malice murder during a robbery, not limited to situations in which the actual killer is a third party." Borrowing from the liability requirements of the provocative act murder doctrine, he then suggests he cannot be liable for implied malice murder here because "there was no evidence that [he] did anything more than participate in the robbery." This argument, though creative, does not persuade.

First, Stefin has not cited a single case applying the liability requirements of the provocative act doctrine when the defendant or his accomplice committed the killing. Second, to support his suggestion that provocative act murder principles provide guidance for assessing murder liability in cases other than those in which the actual killer is a third party, Stefin quotes the Supreme Court's statement in *People v. Pizano*, *supra*, 21 Cal.3d at page 136 that the doctrine's principles "'are not limited to cases in which the person actually committing the homicide is either a victim of the felony or a police officer.'" The context of that statement, however, reveals the Supreme Court's point was that provocative act murder principles may extend to cases in which the killer is not a victim or a police officer but *some other third party*, such as, in that case, a neighbor who acted to prevent a robbery. (See *Pizano*, at pp. 132, 136.)

14

Nothing in *Pizano* suggests the doctrine or its principles apply in cases where the defendant or an accomplice is the killer.

Third, even if we were to apply the provocative act doctrine principle Stefin invokes and to require evidence he engaged in provocative conduct beyond that of merely participating in an armed robbery (see *In re Joe R.*, *supra*, 27 Cal.3d at p. 504 ["mere participation in an armed robbery is not sufficient to invoke murder liability . . . when the victim resists and kills"]), there was such evidence here. Personally armed with a rifle, Stefin helped two other armed accomplices—one of whom he knew was capable of shooting someone to death for little more than arguing with him—overcome the occupants of the restaurant, order them to their knees at gunpoint, and hold them captive while ransacking the restaurant for an elusive cache of money and marijuana. Stefin engaged in "severe, life-threatening, and . . . gun-wielding conduct" that was more provocative of a gun (and meat cleaver) battle than what is implicitly necessary to commit an armed robbery. (*People v. Cervantes*, *supra*, 26 Cal.4th at p. 867; accord, *People v. Mejia*, *supra*, 211 Cal.App.4th at pp. 602-603; see *Taylor v. Superior Court* (1970) 3 Cal.3d 578, 583 [armed robbers' "coercive conduct" toward their victim and demeanor suggesting emotional instability and a propensity for gratuitous violence "was sufficiently provocative of lethal resistance to support a finding of implied malice" under the provocative act doctrine], overruled on another ground in *People v. Antick* (1975) 15 Cal.3d 79, 91, fn. 12; see also *Joe R.*, at p. 505 [describing the holding in *Taylor*].)

15

## DISPOSITION

The order denying Stefin's petition under section 1172.6 is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.