Filed 9/19/16  P. v. Mendoza-Montoya CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISAAC MENDOZA-MONTOYA, JR.,<br><br>Defendant and Appellant. | D068383<br><br><br>(Super. Ct. No. JCF32455) |


APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.


Michael J. McCabe for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Andrew Mestman and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Isaac Mendoza-Montoya, Jr., of one count of first degree residential burglary (Pen. Code, § 459)[1] and found true the allegation that another person, other than an accomplice, was present in the residence during the commission of the burglary (§ 667.5, subd. (c)(21)). Montoya raises two arguments in this appeal: (1) whether, after the magistrate had dismissed the burglary charge in the complaint at the conclusion of the preliminary hearing, the superior court erred in allowing the (refiled) burglary charge in the information to proceed; and (2) whether substantial evidence supports the finding of guilt of burglary beyond a reasonable doubt. Neither argument has merit, and we affirm the judgment.

## I.

## STATEMENT OF FACTS[2]

Shortly after 10:00 p.m. on December 28, 2013, Montoya and three other men approached the upstairs outside entrance of an apartment in Brawley in which brothers Daniel Morales (age 21), Juan Carlos Morales (age 20) and Marcos Morales (age 17) (together, Morales brothers) resided.[3] Daniel was in the living room, laying down but not yet asleep, approximately 10 feet from the door to the outside. Marcos was in the

---

[1]    Further undesignated statutory references are to the Penal Code.

[2]    Where, as here, the sufficiency of the evidence is challenged on appeal, we review the record and recite the facts in a light most favorable to the judgment. (*People v. Hill* (1998) 17 Cal.4th 800, 848-849.)

[3]    Because the brothers share the same last name, we refer to them by their first names for convenience and clarity; we intend no disrespect by this informality. (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1211, fn. 2.)

2

living room, not far from Daniel, watching television. Juan Carlos was in bed in a bedroom. The door to the outside was locked with a deadbolt.

Daniel heard knocking at the door and got up to look through the peep hole to see who was there, but someone on the outside was covering it. The knocking continued until it became banging, and someone on the outside screamed, "Open the door." Daniel stepped back, by which time Juan Carlos and Marcos, who were scared, had joined him. Someone from the outside began kicking in the locked door until it cracked and eventually broke, falling into the apartment in pieces — with the deadbolt still attached to the frame on the floor. At this point, all three Morales brothers were frightened.

Montoya and three men — each perceived to be at least 25 years old — entered the Morales brothers' apartment. Daniel recognized Montoya and one other from the neighborhood,[4] but did not know the remaining two. Montoya appeared angry as he leaned toward Daniel with both fists clenched in a "ready-to-swing position." Daniel thought that Montoya "was going to strike at any second." At the same time, one of the unidentified intruders held a long metal object in his hand, partially covering it with his jacket.

Shouting as he stood in a "striking position," Montoya demanded to know from Daniel whether he (Daniel) had been "talking shit" about him (Montoya). Even though Daniel denied having done so, Montoya continued the confrontation by loudly and

---

[4]    Daniel also recognized Gustavo Lopez, Montoya's codefendant in the original complaint. Montoya tells us that Lopez settled his case before Montoya was arrested.

angrily threatening Daniel three to four times, " 'I'm going to fuck you up.' "  Daniel

understood this to mean that Montoya "was going to cause bodily harm" to him.[5]

Meanwhile, Lopez was standing behind Montoya, yelling angrily three to four times, " 'I

have been looking for you.  I'm going to kill you.' "  At this point, Daniel was "in shock

and scared," and Juan Carlos and Marcos had become even more frightened.

For safety, Juan Carlos and Marcos got closer to Daniel with Marcos placing

himself between Daniel and Montoya.  Daniel and Juan Carlos each told the intruders to

leave the apartment a number of times.  Finally, in order to convince the men to leave,

Daniel said that he would meet them outside downstairs to fight, if that was what they

wanted.  However, Daniel was so scared that, as soon as Montoya and the others left the

apartment, he called 911.

A Brawley police officer promptly responded to the call, but by the time he

arrived, Montoya and the others had left; only the Morales brothers remained.  At the

Morales brothers' apartment, the officer saw an open doorway with wooden pieces of the

door frame broken off on the ground and the deadbolt still in a locked position holding

the door and the portion of the broken frame.[6]  The officer interviewed Daniel, who was

visibly nervous and scared; he was shaking, and his voice was high-pitched and cracking.

---

[5]     Daniel explained that there was a possibility that Montoya wanted to fight him
because at the time he had been dating Montoya's ex-girlfriend.

[6]     According to the officer, this confirmed that the deadbolt had been locked at the
time the door was broken.

4

Daniel explained that he called 911 because he was in fear for his life. The officer also took statements from Juan Carlos and Marcos.

## II.

## STATEMENT OF THE CASE

Based on the above-described activities, the district attorney filed a complaint against Montoya (and Lopez), charging first degree residential burglary in violation of section 459 (count 1) and making criminal threats in violation of section 422, subdivision (a) (count 2). Count 1 gave notice that the burglary was a serious offense (§ 1192.7, subd. (c)) and a violent felony (§ 667.5, subd. (c)) and alleged the inapplicability of probation absent unusual circumstances (§ 462, subd. (a)). Count 2 gave notice that the criminal threat offense was a serious felony (§ 1192.7, subd. (c)) and alleged the reasonableness of Daniel's fear of serious harm.

At the conclusion of the preliminary hearing, the magistrate found reasonable and probable cause to hold Montoya to answer as to count 2, but not as to count 1. Accordingly, the magistrate dismissed count 1 (burglary) and set a date to arraign Montoya on count 2 (criminal threats). Because the effect of the magistrate's oral ruling is at issue on appeal, we have quoted it in full at part III.A.2., *post*.

The district attorney then filed an information, charging Montoya with the same two offenses as in the complaint — namely, first degree residential burglary in violation of section 459 (count 1) and making criminal threats in violation of section 422,

5

subdivision (a) (count 2).[7] Each count of the information also contained the same notices and additional allegations as in the complaint.

Montoya moved to dismiss the information based on the evidence from the preliminary hearing and the magistrate's dismissal of the burglary charge.[8] After consideration of the reporter's transcript from the preliminary hearing, Montoya's written motion, the People's written opposition and the argument of counsel, the superior court denied the motion as to count 1 (burglary) and granted the motion as to count 2 (criminal threats). As relevant to the issue Montoya raises on appeal, the superior court ruled that the dismissal of the burglary count from the complaint was based on the magistrate's *legal conclusion* that the evidence failed to show probable cause that the offense had been committed; i.e., the dismissal was not based on the magistrate's findings of disputed facts. Thereafter, in independently reviewing the evidence from the preliminary hearing, the superior court concluded that the evidence established reasonable and probable cause to hold Montoya to answer for the burglary charge.

---

[7]    The district attorney filed the information pursuant to section 739, which provides in relevant part: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant *which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed*." (Italics added.)

[8]    Montoya brought his motion pursuant to section 995, subdivision (a)(2)(B), which provides in relevant part: "[T]he . . . information shall be set aside by the court in which the defendant is arraigned, upon his or her motion" "[t]hat the defendant had been committed without reasonable or probable cause."

The district attorney filed a first amended information that deleted the criminal threats charge.

On the first day of trial prior to jury selection, the court allowed the district attorney to file a second amended information that added an allegation that the burglary offense was also a violation of section 667.5, subdivision (c), in that another person, other than an accomplice, was present in the residence during the commission of the offense. At the conclusion of the six-day trial, the jury found Montoya guilty of burglary and found true the section 667.5, subdivision (c) allegation.

The court denied Montoya's motion for a new trial (§ 1181, subd. 6 [lack of substantial evidence]; see fn. 14, *post*) and sentenced Montoya on June 25, 2015. Montoya timely appealed.

III.

DISCUSSION

Montoya argues first that the superior court erred in not dismissing the refiled burglary count in the information after the magistrate had dismissed the burglary count in the complaint at the conclusion of the preliminary hearing. Montoya argues next that the record does not contain substantial evidence to support the finding of guilt of burglary beyond a reasonable doubt. As we explain, neither argument has merit.

A.    *The Superior Court Did Not Err in Denying Montoya's Motion to Dismiss the Burglary Count in the Information*

Montoya contends that because the magistrate dismissed the burglary count in the complaint based on express findings of disputed facts, the superior court erred in denying

7

Montoya's motion to dismiss the refiled burglary count in the information — i.e., the court erred in allowing the People to reinstate the burglary charge under section 739. The People disagree, contending that the superior court properly considered Montoya's dismissal motion de novo, because the magistrate dismissed the burglary charge in the complaint as a matter of law.

In analyzing this issue, we must focus on the substance of the magistrate's dismissal of the burglary count at the conclusion of the preliminary examination.

1.    *Law*

At the conclusion of a preliminary hearing, the magistrate must decide whether the prosecution has presented enough evidence to hold the defendant to answer in the superior court. (§ 872; *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 252 (*Johnson*).) The evidence necessary to hold the defendant to answer is " 'a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " (*People v. Slaughter* (1984) 35 Cal.3d 629, 636 (*Slaughter*).) The magistrate "does not decide whether defendant committed the crime, but only whether there is ' "some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." ' " (*Id.* at p. 637.) In making this decision, the magistrate may weigh the evidence, resolve conflicts and assess credibility where appropriate. (*Ibid.*; *Johnson*, at p. 252.)[9]

_____

[9]    In *Johnson*, for example, the magistrate dismissed the charges after resolving conflicts in the evidence against the prosecution. (*Johnson*, *supra*, 15 Cal.3d at p. 252.)

A magistrate may make factual findings and/or legal conclusions at the end of the preliminary hearing. (*Slaughter*, *supra*, 35 Cal.3d at p. 638; *People v. Rowe* (2014) 225 Cal.App.4th 310, 318 (*Rowe*).) A legal conclusion occurs when the magistrate "accepts the prosecution's evidence, but determines there is insufficient evidentiary support for one or more elements of a charge." (*Rowe*, at p. 318.) In contrast, a factual finding typically includes an express statement of the facts being found or otherwise specifies the evidence believed or disbelieved by the magistrate. (*Ibid.*)[10]

Where, as in the present case, a magistrate holds the defendant to answer under section 872, the prosecutor is required to file an information within 15 days. (§ 739; see fn. 7, *ante*.) The information may charge the defendant with any offense named in the holding order *or any offense shown to have been committed by the evidence at the preliminary hearing*. (*Ibid.*; *Parks v. Superior Court* (1952) 38 Cal.2d 609, 612 [information may charge "a different but related crime shown by the evidence taken before the magistrate bearing on the transaction involved in the commitment order"].) This includes offenses that were dismissed by the magistrate, *unless the dismissal was based on factual findings by the magistrate*. (*Pizano v. Superior Court* (1978) 21 Cal.3d 128, 133 (*Pizano*) ["an offense not named in the commitment order may not be added to

---

10    In *People v. Dawson* (2009) 172 Cal.App.4th 1073 (*Dawson*), for example, on the record the magistrate reviewed the evidence presented at the preliminary hearing. (*Id.* at pp. 1084-1085.) However, because the ruling contained neither an express statement of what the magistrate "found" nor any indication of the specific evidence the magistrate believed or disbelieved, the Court of Appeal concluded that the magistrate had not made any factual findings. (*Id.* at p. 1089; accord, *Rowe*, at p. 318.)

9

the information if the magistrate made *factual findings* which are fatal to the asserted conclusion that the offense was committed"]; *Jones v. Superior Court* (1971) 4 Cal.3d 660, 666 (*Jones*); *Slaughter*, *supra*, 35 Cal.3d at p. 639.) That is because if the magistrate makes findings on disputed facts, "those findings are conclusive if supported by substantial evidence." (*Slaughter*, at p. 638.) In contrast, when "the magistrate either expressly or impliedly accepts the evidence and simply reaches the ultimate *legal conclusion* that it does not provide probable cause . . . , such [legal] conclusion is open to challenge by adding the offense to the information." (*Pizano*, at p. 133; *Slaughter*, at p. 639.)

Where the prosecutor refiles the previously dismissed charges under section 739, the defendant may move to set aside the information under section 995 if the prior dismissal was based on the magistrate's findings on disputed facts.[11] (*Slaughter*, *supra*, 35 Cal.3d at p. 638; *Jones*, *supra*, 4 Cal.3d at p. 667.)

As a general rule, where a section 995 motion is based only upon a preliminary hearing transcript (as here), an appellate court applies the same standard on review as the superior court applies initially in deciding the motion. (See *People v. Superior Court (Maciel)* (1982) 134 Cal.App.3d 893, 897, fn. 5.) Here, the superior court reviewed and

---

[11] If the magistrate dismisses the original charge *as a matter of law*, the defendant may still challenge the refiled charges under section 995 on the basis that, on independent review, the evidence from the preliminary hearing does not provide "a rational ground for believing that [the] defendant is guilty of the offense." (*Slaughter*, *supra*, 35 Cal.3d at pp. 639-640.) Montoya did not move to dismiss the information on this ground and raises no related issue or argument on appeal.

considered the magistrate's oral ruling and determined in the first instance whether the ruling was one of law or fact. We shall do the same. (*Ibid.*; see *Rowe*, *supra*, 225 Cal.App.4th at pp. 317-318 [appeal from superior court's denial of prosecution's § 871.5 motion to reinstate a charge dismissed at the preliminary hearing].)

2.      *Analysis*

At the conclusion of the preliminary hearing, the magistrate ruled in relevant part as follows (italics added to emphasize the language on which Montoya relies):

> "[Montoya's counsel] makes convincing arguments as to Count 1 [burglary], not so much as to Count 2 [criminal threats]. I will not find reasonable and probable cause as to Count 1, the burglary, given the circumstances.
>
> "As to Count 2, it is not just the statements of the defendant that should be considered as to whether or not there is reasonable and probable cause to believe that [a criminal threat] has been [com]mitted, but it was the entire course [of] events that occurred on the date in question: four people breaking in the apartment. There [were] concerted efforts on behalf of all of them. So whether it is direct or aiding and abetting theory, I do find there is reasonable and probable cause to believe that the crime of criminal threats, a violation of [section 422, subdivision (a)] was committed.
>
> "I do find the defendant held to answer, given all the circumstances of conduct that occurred there. And essentially, this was a group of four people acting in concert together. That occurred.
>
> "At least once they got into the apartment, *it is unclear what they were going to do once they — before they broke in, or at the time they broke in. But there certainly w[ere] events that occurred in the apartment.*
>
> "Once they got in, that suggests that the crime was committed, and there's probable cause to hold the defendant to answer." (Italics added.)

Like the superior court, we must determine whether, by this ruling, the magistrate dismissed the burglary count *as a matter of law* (expressly or impliedly accepting the evidence) or *based on specific findings of disputed facts*. If the magistrate ruled as a

11

matter of law, then the prosecutor was entitled to refile the burglary charge in the information; however, if the magistrate based the ruling on findings of disputed facts, then the prosecutor was not entitled to refile the burglary charge in the information. (*Pizano*, *supra*, 21 Cal.3d at p. 133; *Slaughter*, *supra*, 35 Cal.3d at p. 639; *Rowe*, *supra*, 225 Cal.App.4th at p. 318.)

Montoya focuses exclusively on the magistrate's statement:  " 'it is unclear what [Montoya and the others] were going to do once they — before they broke in, **or at the time** they broke in.' "  (Bolding in original.)  Montoya then argues that, since the offense of burglary requires evidence that he "inten[ded] to commit grand or petit larceny or any felony" *at the time he entered the apartment* (§ 459) and since the magistrate "found" the evidence unclear as to Montoya's intent before or at the time he broke into the apartment, the magistrate's dismissal of the burglary charge was based on a finding of a disputed fact.  We disagree with Montoya's analysis.

In dismissing the burglary charge and holding Montoya to answer to the criminal threats charge, the magistrate orally explained the ruling *as to each count separately*, and Montoya is relying on statements the magistrate made in the context of the ruling on the criminal threats charge *only*.  A plain reading of the reporter's transcript — quoted in full at the beginning of this part of our opinion with the pertinent language italicized — discloses that the magistrate ruled on the burglary charge (count 1) in the first paragraph

12

and the criminal threats charge (count 2) in the remaining paragraphs.[12]  Thus, the entirety of the magistrate's ruling on the burglary charge is:  "[Montoya's counsel] makes convincing arguments as to Count 1 [burglary], not so much as to Count 2 [criminal threats].  I will not find reasonable and probable cause as to Count 1, the burglary, given the circumstances."[13]  The remainder of the ruling relates entirely to the criminal threats charge.

Indeed, when read in context of the two sentences that immediately follow the statement on which Montoya relies, it can relate to *only* the criminal threats charge, because the magistrate found probable cause to hold Montoya to answer *only* the criminal threats charge:  "[I]t is unclear what they were going to do once they — before they broke in, or at the time they broke in.  But there certainly w[ere] events that occurred in the apartment.  *Once they got in, that suggests that the crime was committed, and there's probable cause to hold the defendant to answer*."  (Italics added.)  In quoting and discussing the magistrate's ruling in his brief, Montoya did not include the sentence after the statement on which he relies (quoted in italics immediately above).  Significantly, this latter sentence places the language at issue in the context of the charge for which the magistrate found probable cause — i.e., criminal threats, not burglary.

---

[12]  We recognize that the paragraph breaks are the result of the reporter's exercise of discretion.  Our analysis is not based on where the paragraphs begin or end, but rather on the context of the magistrate's statements.  We identify the "first paragraph" or "remaining paragraphs" for purposes of reference only.

[13]  Montoya does not contend that the magistrate's ruling as to the burglary charge in this first paragraph contains any findings of disputed facts.

13

Further, the language on which Montoya relies does not contain either an express statement of what facts the magistrate "found" or any indication of what evidence the magistrate believed or disbelieved. (*Dawson*, *supra*, 172 Cal.App.4th at p. 1089; *Rowe*, *supra*, 225 Cal.App.4th at p. 318.) Nor did the ruling indicate that the magistrate weighed specific evidence, drew factual inferences, resolved conflicts in the evidence or determined witness credibility — each, had it occurred, providing potential support for the contention that the magistrate had made a factual, rather than legal, determination. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 257-258, quoting from *Slaughter*, *supra*, 35 Cal.3d at p. 637, and *Jones*, *supra*, 4 Cal.3d at p. 667.) Montoya has not cited and our independent research has not disclosed any authority by which a reviewing court will *infer* a factual finding in the magistrate's ruling.

Finally, even if we assume that the magistrate found on disputed facts that Montoya did not intend to criminally threaten Daniel until after he (Montoya) broke into the apartment in the context of ruling on probable cause for the burglary charge, the result is no different. At most such a finding could support an argument that the offense of making criminal threats (§ 422, subd. (a)) did not qualify as the felony Montoya intended to commit at the time he entered the apartment for purposes of the burglary charge (§ 459). Such a finding, however, would not take into consideration that the felony Montoya intended to commit at the time of entry may have been assault- or battery-related (or any other) felony.

For these reasons, under the standards set forth by our Supreme Court, we conclude that, in ruling on the probable cause for the burglary charge in the complaint,

14

the magistrate "impliedly accept[ed] the evidence and simply reach[ed] the ultimate *legal conclusion* that it d[id] not provide probable cause." (*Pizano*, *supra*, 21 Cal.3d at p. 133; *Slaughter*, *supra*, 35 Cal.3d at p. 639.) Accordingly, the superior court did not err in denying Montoya's motion to dismiss the refiled burglary count in the information.

B.     *Substantial Evidence Supports the Finding of Montoya's Guilt of Burglary Beyond a Reasonable Doubt*

Montoya argues that the record on appeal lacks substantial evidence to support a finding that, at the time he entered the Morales brothers' apartment, he harbored the requisite intent to commit a felony. Alternatively, Montoya argues that this court should sit "as a so-called 'thirteenth juror' " and independently conclude as a matter of law that the evidence is insufficient to uphold the verdict.

1.     *Substantial Evidence Supports a Finding of the Requisite Intent*

To convict Montoya for burglary, section 459 required proof that Montoya entered the Morales brothers' apartment "with intent to commit grand or petit larceny or any felony." (*Ibid*.; see *People v. Hughes* (2002) 27 Cal.4th 287, 351 ["the intent to commit *any* felony (or theft) suffices for burglary"].) At trial, the People contended — and the court instructed the jury to determine whether — at the time Montoya entered the apartment, he had the requisite intent to commit either a battery with serious bodily injury in violation of section 243, subdivision (d), or a criminal threat in violation of section 422, subdivision (a). (CALCRIM Nos. 1700, 1701, 925, 1300.)

On appeal, Montoya argues that, at the time he broke into the apartment, "[t]here were no facts presented which reasonably show that [he] intended to do anything but challenge [Daniel] to a fight."

a.    *Law*

" 'When a jury's verdict is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury.  It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion.' "  (*People v. Ghipriel* (2016) 1 Cal.App.5th 828, 832.)

The test we apply on appeal "is not whether guilt was proved beyond a reasonable doubt, but whether there is substantial evidence in support of the findings of the trier of fact."  (*People v. Martin* (1973) 9 Cal.3d 687, 695.)  To be considered "substantial" for this purpose, the evidence "must be more than evidence which merely raises a strong suspicion of guilt as mere suspicion will not support an inference of fact."  (*Ibid.*; see *People v. Holt* (1997) 15 Cal.4th 619, 669 (*Holt*) ["An inference is not reasonable if it is based only on speculation."].)

b.    *Analysis*

Montoya argues that any inference as to his intent to act once he entered the Morales brothers' apartment "is based on mere conjecture, speculation, supposition, and

16

guess work, which renders it unreasonable."  We disagree; by contending that the record on appeal contains "no facts presented which reasonably show that [he] intended to do anything but challenge [Daniel] to a fight," Montoya does not properly apply the substantial evidence standard of review.

*Prior to the time* when an accused enters a structure, proof of what that person's intent is *following* entry of the structure is rarely susceptible of direct proof and, therefore, may be inferred from the facts and circumstances disclosed by the evidence. (*People v. Carter* (2005) 36 Cal.4th 1215, 1260-1261; *Holt*, *supra*, 15 Cal.4th at p. 669.) As a result, for example, "evidence such as theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry."  (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; accord, *People v. Moomey* (2011) 194 Cal.App.4th 850, 858-859.)  Likewise, evidence of a battery causing serious bodily injury or a criminal threat by Montoya once he was inside the Morales brothers' apartment may create a reasonable inference that Montoya had intent to cause serious bodily injury or criminally threaten Daniel at the time he broke into the apartment.

After 10:00 p.m., Daniel and Juan Carlos had retired to their beds for the evening in their locked apartment.  Loud knocking became banging on the door to the outside of apartment, accompanied by screams of "Open the door."  Because someone from the outside was covering the peep hole, the Morales brothers could not see who was banging and screaming outside.  The banging became kicking, until the door *and frame* — attached by a deadbolt — cracked and eventually broke, falling into the apartment in pieces.  Four men, each at least 25 years old, barged into the apartment.  One of the men,

17

Montoya, was angry and leaning toward Daniel with both fists clenched in a "ready-to-swing position."  Another of the intruders held a long metal object in his hand, partially covering it with his jacket.

As he stood in a "striking position," Montoya angrily threatened Daniel three to four times, shouting " 'I'm going to fuck you up.' "  Daniel understood this to mean that Montoya was going to cause him "bodily harm."  Meanwhile, another of the intruders, Lopez, yelled angrily three to four times, " 'I have been looking for you.  I'm going to kill you.' "

From the first knock, Daniel was "scared"; after Montoya threatened Daniel with great bodily harm, Daniel was "in shock and scared"; by the time Montoya and the others left, Daniel was "in fear for his life"; and when the police officer arrived, Daniel was still visibly nervous and scared, shaking and speaking in a high-pitched and cracking voice.

Given this record, substantial evidence exists — i.e., evidence which raises more than a suspicion of guilt — from which the jury properly could infer that, at the time Montoya broke into the Morales brothers' apartment, Montoya had the requisite intent to commit a battery causing serious bodily harm or a criminal threat.  " ' " 'When the evidence justifies a reasonable inference of felonious intent, the [burglary] verdict may not be disturbed on appeal.' " ' "  (*Holt*, *supra*, 15 Cal.4th at p. 670.)

2.      *The Court of Appeal Does Not Sit As "a Thirteenth Juror"*

Montoya asks this court to "undertake an independent review of the record as a 'thirteenth juror' to conclude that the jury verdict was not warranted on the weight of the evidence produced at trial."  Montoya cites no statutory authority for his request, and the

18

cases he relies on deal exclusively with *the trial court's authority* to sit as a thirteenth juror as part of a posttrial motion for new trial based on a verdict that is "contrary to law or evidence" under section 1181, subdivision 6.[14] "In ruling upon a motion for a new trial [under section 1181, subdivision 6], the trial court is required to independently weigh the evidence, but *an appellate court will not modify or set aside the verdict if there is any substantial evidence to support it*." (*People v. Serrato* (1973) 9 Cal.3d 753, 761, italics added.)

Here, in response to the argument *properly* raised by Montoya, we have already concluded that the record contains substantial evidence to support the jury's verdict. (Pt. III.B.1., *ante*.) Montoya does not ask us to review the trial court's denial of his new trial motion,[15] and no legal authority exists for us to conduct an "independent

---

[14]   "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:  [¶] . . . [¶]  6.  When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed . . . ."  (§ 1181, subd. 6.)  The "power" referred to in the latter clause of subdivision 6 applies *only* to modifying the judgment without granting a new trial where the evidence "shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof or of a lesser crime included therein." (*People v. Kelley* (1929) 208 Cal. 387, 391.)  In this appeal, Montoya has not challenged the degree of the burglary for which he was convicted.

[15]   The Attorney General understands Montoya's argument to be that the trial court erred in denying the new trial motion he presented under section 1181, subdivision 6. We disagree with the Attorney General's understanding and, accordingly, have not undertaken an analysis of — nor do we express an opinion as to — whether the trial court abused its discretion in denying Montoya's motion for new trial.

assessment" to determine whether "the jury's verdict was contrary to the evidence presented at trial" as Montoya requests.

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:


BENKE, Acting P. J.


PRAGER, J.*

---

*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.